**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**WILBER J. MCNAIR, JR.,**

      **Petitioner,**

**v.**                            **CRIMINAL ACTION NO. 4:17-cr-00107**

**UNITED STATES OF AMERICA,**

      **Respondent.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is *pro se* litigant Wilbert J. McNair, Jr.'s ("Petitioner") Motion to

Vacate, Set Aside, or Correct a Sentence pursuant to Title 28, United States Code, Section 2255

("2255 Motion"). Having reviewed the motions and filings, the Court finds that a hearing is not

necessary to address Petitioner's motions. *See* 28 U.S.C. § 2255(b). For the reasons set forth

below, Petitioner's 2255 Motion is **DENIED**.

### I.    FACTUAL AND PROCEDURAL HISTORY

From February 2013 to May 2017, Petitioner sought to defraud the Commonwealth of

Virginia by providing false information regarding the amount of hourly instruction given and the

manner and quality of the instruction provided to veteran students at Hampton Roads Skills

Center ("HRSC"). ECF No. 9 at 7. HRSC utilized Virginia's tuition assistance funds and

purported to offer classroom instruction in a "combination welding course and a [twenty-five]

week welding program in stick, flux core, MIG, and TIG welding along." *Id.* at 5–6. However,

the majority of the students did not physically attend when classes were purportedly held and

some never attended classes during their enrollment period. *Id.* at 7. Because of Petitioner's

fraud, Virginia suffered a loss of $1,402,232.38. *Id.* at 6, 10. Subsequently, on June 19, 2017, Virginia withdrew its approval for HRSC to receive tuition assistance funds. *Id.*

Additionally, Petitioner failed to report $91,450.00 in 2013, $11,489 in 2014, and $39, 479.52 in 2015 on his tax income reports. ECF No. 15 at 14. Petitioner's disparities resulted in a loss to the United States Internal Revenue Service ("IRS") of $55,688 in 2013, $1,015 in 2014, and $12,965 in 2015. *Id.* Petitioner has yet to file taxes for 2016 and 2017. *Id.*

On November 9, 2017, Petitioner was named in two-counts, charging him with wire fraud conspiracy, in violation of 18 U.S.C. § 1349, and making and subscribing a false tax return, in violation of 26 § U.S.C 7206(1). ECF No. 2. On December 21, 2017, Petitioner appeared in a plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure before a United States Magistrate. ECF No. 7. The Judge accepted Petitioner's guilty plea to count one, wire fraud conspiracy, under 18 U.S.C. § 1349 and count two, making and subscribing a false tax return, under 26 § U.S.C 7206(1) upon finding they were made knowing, voluntary, and supported by an independent basis in fact. ECF No. 10. In the Presentence Investigation Report, the probation officer noted a two-level enhancement for Petitioner's failure to report $10,000 or more income in income derived from illegal activity to the IRS. ECF No. 19. Subsequently, Petitioner's counsel made two objections to this enhancement in his sentencing position paper. ECF No. 21 at 1. On May 1, 2018, the Court sentenced the Petitioner to 40 months of imprisonment and ordered him to pay $200 in special assessment fees and $1,471,891.38 in restitution. ECF No. 23 at 4.

On October 31, 2018, Petitioner filed the instant 2255 Motion. ECF No. 28. Petitioner claims that his counsel was ineffective because: (1) he failed to properly inform Petitioner of the consequences of the guilty plea; (2) he failed to object to the use of the relevant conduct at

2

sentencing; (3) he failed to adequately consult with Petitioner about his right to appeal or file a notice of appeal; and (4) Petitioner was prejudiced due to his counsel's ineffectiveness. *Id.* at 3–8. On November 13, 2018, the Court ordered the government to respond. ECF No. 29. On November 23, 2018, the government filed a Motion to Compel Petitioner's counsel ("Mr. Cejas") to provide information that is reasonably necessary to respond to Petitioner's 2255 motion. ECF No. 30. The Court granted the government's motion on December 4, 2018. ECF No. 32. On December 26, 2018, the government filed its response. ECF No. 33. Petitioner was given an opportunity to file a reply but has yet do to so. *See* ECF No. 29.

## II.    LEGAL STANDARDS

### A. Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Additionally, *pro se* filers are entitled to more liberal construction of their pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct

appeal are deemed waived, procedurally defaulted, and cannot be raised on a 2255 Motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999). However, an individual may raise a procedurally defaulted claim if he/she can show (1) "cause and actual prejudice resulting from the errors of which he complains" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. . . . [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–93.

To demonstrate cause and prejudice, a petitioner must show the errors "worked to [her] actual and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal and constitute sufficient cause to review a procedurally defaulted claim. *See Untied States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493.

## B. Ineffective Assistance of Counsel

A viable ineffective assistance of counsel claim arises when "the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove a claim of ineffective assistance of counsel, a petitioner must make two showings.

First, a petitioner must show that counsel's performance was deficient. *Id.* at 687. Counsel's errors must have been so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment. *Id.* In order to demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688.

4

"Judicial scrutiny of counsel's performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That presumption is even greater when counsel's decisions represent strategic, tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). A petitioner bears the burden of rebutting this presumption. *Strickland*, 466 U.S. at 689.

Second, a petitioner must show that the deficient performance prejudiced the defense. *Id.* at 687. In other words, counsel's errors must have been so serious that the petitioner was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In short, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

### C. Guilty Pleas' Effect on 2255 Motions and Ineffective Assistance of Counsel Claims

Guilty pleas are "'grave and solemn act[s] to be accepted only with care and discernment.'" *United States v. Moussaui*, 591 F.3d 263, 278 (4th Cir. 2010) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). As such, when a defendant makes a knowing and voluntary guilty plea, that person "'waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea.'" *Id.* at 279 (quoting *United States v. Bundy*, 392 F.3d 641, 644 (4th Cir. 2004)).

Moreover, a guilty plea generally limits collateral attacks to "whether the plea was counseled or voluntary." *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1295 (4th Cir. 1992) (citing *United States v. Broce*, 488 U.S. 563, 569 (1989)). As such, a claim of ineffective assistance prior to the guilty plea may undermine that plea. *See id.* However, claims of ineffective assistance when there is a guilty plea on the record must meet a higher burden beyond the normal *Strickland* requirements. When there is a guilty plea, in order to satisfy the prejudice prong, a defendant must show that but for counsel's ineffective assistance, he would not have pled guilty and would have gone to trial. *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Furthermore, any statements made under oath are binding on the defendant, including any statements that confirm satisfaction of counsel. *Fields*, 956 F.2d at 1295, 1299 (citing *Blackledge v. Allison*, 431 U.S. 63, 74–75 (1977))

### III.    DISCUSSION

#### A.  Failure to Provide Effective Counsel

##### 1.  Failure to Properly Inform Petitioner of the Consequences of the Guilty Plea

Petitioner first argues that Mr. Cejas was ineffective because he did not properly inform the Petitioner of the consequences of pleading guilty. ECF No. 28 at 3. He claims that Mr. Cejas induced him to enter into the plea agreement by failing to explain the gravity of the sentence and presenting the plea agreement as the only plausible choice to receive a "minor sentence." *Id.* at 4.

Under the *Strickland* requirements, a petitioner must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687. Petitioner must show "that counsel's representation fell below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688. If a judge determines that an attorney's performance falls within the "wide range of reasonable professional assistance," this determination creates a heavy

presumption which the petitioner must rebut. *Id.* at 689. Additionally, while a claim of ineffective counsel does undermine a guilty plea, *Fields*, 956 F.2d at 1295 (citing *Blackledge v. Allison*, 431 U.S. 63, 74–75 (1977)), if an individual testifies under oath that he is satisfied with his counsel, the statement under oath is controlling. *Fields*, 956 F.2d at 1299 (citing *United States v. Broce*, 488 U.S. 563, 569 (1989)).

The record contradicts Petitioner's claim that his attorney was ineffective during the guilty plea process. Petitioner specifically testified under oath at his plea hearing that he understood the contents of the plea, that he discussed all facts and possible defenses with his counsel, and that he was satisfied with Mr. Cejas' strategy and consideration of his case's facts. (Hearing Transcript at 26–27). Petitioner also testified at his Rule 11 hearing that he had read, reviewed, and signed his plea agreement in the presence of his attorney and that he understood the document in its entirety. *Id.* at 20. Additionally, Mr. Cejas affirmed at the Rule 11 hearing that he counseled Petitioner and reviewed the plea agreement with Petitioner "in great detail," and that Petitioner appeared to understand the contents of the plea agreement. *Id.* at 20–21. Mr. Cejas also stated in his affidavit that he met with Petitioner five times for a total of eleven hours. ECF No. 33–2 at 6.

Furthermore, the Magistrate Judge outlined the consequences of the guilty plea by highlighting Petitioner's waiver of his right to a trial and right to appeal. *Id.* at 22–23. He also informed Petitioner of his right to not plead guilty and that if Petitioner chose to exercise this right, he would be provided a jury trial where the government has the burden of proof. *Id.* Petitioner once again acknowledged under oath that he understood. *Id.*

Petitioner's statements under oath at his plea hearing also undermine his claim that he was induced to sign the plea agreement. *Id.* at 24–25. Petitioner specifically testified that his

guilty plea had not been coerced by threats or use of force. *Id.* at 25. Petitioner also testified that he had not been promised any leniency in sentencing or any other promises. *Id.* The Magistrate Judge, in evaluating Petitioner's statements, found Petitioner's plea to be knowing, voluntary, and supported by independent statement of fact. *Id.* at 37–38. Because Petitioner's sworn statements, the Magistrate Judge's findings, and Mr. Cejas' sworn affidavit corroborate that Petitioner understood the consequences of a guilty plea, Petitioner's counsel's conduct does not constitute ineffective performance under *Strickland*.

### 2. Failure to Object to the Use of the Relevant Conduct at Sentencing

Petitioner claims that Mr. Cejas' performance was deficient because he failed to make proper objections in regard to the use of relevant conduct at sentencing. ECF No. 28 at 4. However, Petitioner's claim contradicts the record. Mr. Cejas did indeed make a written objection to the Government's two-level enhancement for sophisticated means pursuant to U.S.S.G § 2B1.1(b)(10)(C). ECF No. 21 at 2. Mr. Cejas argued that Petitioner had not met the definition of sophistication because Petitioner only used the "minimum contact" necessary to procure fraud. *Id.* at 3. The Court took Mr. Cejas' objection into consideration and instead of the 41 months to 51 months recommended in the Presentence Investigation Report, Petitioner was sentenced to 40 months, which is below the advised guidelines. ECF No. 19; ECF No. 23. Because Mr. Cejas objected to and argued against the sentencing enhancement, Petitioner's claim is factually incorrect.

### 3. Failure to Adequately Consult with Petitioner about his Right to Appeal or File a Notice of Appeal

Petitioner claims that the plea agreement did not contain an appeal-waiver provision. ECF No. 28 at. 5. Petitioner also claims that Mr. Cejas failed to properly counsel him about his right to appeal or the filing procedures of a notice of appeal. *Id.*

8

An attorney must consult with his client when there is a "reasonable" basis to believe that (1) a "rational defendant would want to appeal or (2) the defendant reasonable demonstrated to his attorney that he was interested in appealing." *United States v. Poindexter*, 492 F.3d 263, 268 (4th Cir. 2007) (quoting *Roe v. Flores-Ortega*, 528 U.S. at 480). Additionally, in addressing whether an attorney has a duty to consult in a guilty plea cases, courts should consider "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived appeal rights." *Id.*

First, Petitioner's claim that that his plea-agreement lacked the appeal-waiver provision directly contradicts the record. *See* ECF No. 8 at 3. Not only did Petitioner acknowledge the location of the waiver of appeal under oath at his Rule 11 hearing, but he also initialed the same page that the waiver was located on in the plea agreement. *Id*; (Hearing Transcript at 20). Because the appeal-waiver provision is in the plea agreement and Petitioner acknowledged this provision both under oath and by his signature, Petitioner's claim is factually incorrect. (Hearing Transcript at 6, 31–32).

Second, because Petitioner did have a waiver in his plea bargain, (Hearing Transcript at 31), Mr. Cejas' duty to consult is reduced. Moreover, whether or not Mr. Cejas had a duty to consult is of irrelevant because he did consult with the Petitioner. ECF No. 33–2 at 6. Mr. Cejas stated in his affidavit that following Petitioner's sentencing hearing, he told Petitioner that "he could appeal" but that an appeal was unlikely due to the waiver in the plea agreement. *Id.* According to Mr. Cejas' sworn statement, Petitioner did not direct him to file an appeal. *Id.* Thus, Petitioner's counsel was not ineffective on failing to consult with Petitioner about his right to appeal.

An attorney who chooses not to file a timely appeal following his client's directive acts in an unprofessional reasonable manner. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Poindexter*, 492 F.3d at 268. When an attorney is not expressly instructed to file an appeal and accordingly does not file an appeal, the defendant must prove that "had he received reasonable advice from his attorney, he would have instructed his attorney to file a timely notice of appeal." *Poindexter*, 492 F.3d at 268–69 (quoting *Roe v. Flores-Ortega*, 528 U.S. at 486). Additionally, evidence of "non-frivolous grounds for appeal" or that the defendant immediately voiced "a desire to appeal is highly relevant." *Id.* Petitioner does not claim that he ever directed Mr. Cejas to file an appeal. Instead he claims that Mr. Cejas should have filed an appeal of his own volition. ECF No. 28 at 7. Petitioner also claims that Mr. Cejas should have known that Petitioner had non-frivolous grounds for an appeal. *Id.*

Petitioner cannot attribute his missed opportunity to file an appeal due to a lack of "reasonable" advice because Mr. Cejas did consult with and advise Petitioner about filing an appeal. *See* ECF No. 33–2 at 6. Petitioner's claim is further weakened by the absence of an affirmative claim that he expressed a desire to appeal and Mr. Cejas' statement that Petitioner did not indicate that he wanted to appeal following sentencing. *Id.* Additionally, Petitioner's last claim that Mr. Cejas should have known an appeal was necessary due to non-frivolous claims also fails. ECF No. 28 at 7. Mr. Cejas did not have an additional duty to file an appeal because the waiver of appeal in Petitioner's plea agreement and Petitioner's sentence below the advised guidelines would have made the appeal frivolous. ECF No. 8 at 3; ECF No. 23.

Therefore, Petitioner's claim of ineffective assistance on failing to adequately consult with Petitioner about his right to appeal or file a notice of appeal is wholly baseless.

**B. Petitioner was Prejudiced Due to his Counsel's Ineffectiveness**

Finally, Petitioner claims that he was prejudiced due to his counsel's ineffectiveness. ECF No. 28 at 8. Petitioner also claims that he was prejudiced due to the additional jail time served and Mr. Cejas' failure to object to the length of his sentence. *Id.*

When there is a guilty plea, in order to satisfy the prejudice prong, a defendant must show that but for counsel's ineffective assistance, he would not have pled guilty and would have gone to trial. *Meyer*, 506 F.3d at 369 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

The record reflects that Petitioner did not desire to go to trial. Specifically, Petitioner affirmed to the Magistrate Judge at his Rule 11 hearing that he understood that pleading guilty would forgo "any further trial of any kind in [his] case." (Hearing Transcript at 24). In addition to Petitioner's testimony, Mr. Cejas' affidavit stated that Petitioner told him "in early October 2017 that he wanted to plead guilty and not go to trial." ECF No. 33–2 at 4. While Mr. Cejas also specified that he told Petitioner "he would likely be convicted" if he went to trial, he also stated that during several meetings, Petitioner continually indicated that the evidence against him was significant and that he wanted to continue with the plea. *Id.* Finally, Mr. Cejas' affidavit attests that Petitioner never indicated that he wanted to go to trial during the two months spent reviewing the plea agreement. *Id.* at 6. Furthermore, the Magistrate Judge's verification of Petitioner's voluntariness to forgo his right to a trial undercuts Petitioner's claim. *Id.* at 37–38.

Petitioner's claim that he was prejudiced due to his additional time in jail is also irrelevant for the following reasons. First, Mr. Cejas did object to the sentencing guidelines and Petitioner was sentenced below the sentencing guidelines. ECF No. 21 at 2. Second, by Petitioner's own admission in the plea agreement and his Rule 11 hearing, the evidence against him was significant. (Hearing Transcript at 37). Third, Petitioner received a sentence of forty

months when the maximum sentence for both counts was twenty-three years or twenty years served concurrently. *Id.* at 14–15; ECF No. 23.

Therefore, Petitioner was not prejudiced by additional jail time because the Court sentenced Petitioner below his sentencing guideline range.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that it is clear from the pleadings and filings that Petitioner is not entitled to relief. Accordingly, Petitioner's 2255 Motion is **DENIED**.

This Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). Petitioner's claims contradict the record and do not have any basis in law. As such, Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, and a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that she may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date. The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia

March 16, 2019

Raymond A. Jackson
United States District Judge

12